IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TRACEY FERGERSON,           ) | |
| ) | |
| Petitioner,           ) | |
| ) | |
| v.           ) | Civil Action No. 2:13cv376-WHA |
| ) | (WO) |
| UNITED STATES OF AMERICA,           ) | |
| ) | |
| Respondent.           ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by Tracey Fergerson ("Fergerson") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## I.  INTRODUCTION

On January 18, 2012, Fergerson pled guilty under a plea agreement to conspiracy to defraud the United States with respect to claims, in violation of 18 U.S.C. § 286.[1] After a sentencing hearing on May 15, 2012, the court sentenced Fergerson to 115 months in prison.  Fergerson did not appeal.

On May 28, 2013, Fergerson filed this § 2255 motion, asserting that:

1. Her trial counsel rendered ineffective assistance by–

---

[1] As part of the plea agreement, the Government dismissed fourteen counts against Fergerson for filing false claims in violation of 18 U.S.C. § 287, three counts of wire fraud in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.  The plea agreement contained a waiver of Fergerson's right to appeal or collaterally attack her conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

      (a)    failing to adequately challenge the loss attributed to her for sentencing purposes;

      (b)    failing to investigate her mental health issues;

      (c)    having her stipulate that her offense involved ten or more victims; and

      (d)    failing to raise an *ex post facto* argument regarding the version of the Sentencing Guidelines used in her case.

2.    The district court abused its discretion by using a modified "ultra conservative" methodology to calculate loss in her case

Doc. No. 1 at 5-15; Doc. No. 4 at 4-12.[2]

The Government maintains that Fergerson's claims either lack merit or are procedurally barred (or both) and therefore should be denied. Doc. No. 13. After consideration of the parties' submissions, the record, and the relevant law, the court finds that the § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for

---

[2] Unless otherwise indicated, document numbers ("Doc. No.") referred to in this Recommendation are those assigned by the Clerk in the instant civil action. References to exhibits ("Ex.") are to those filed by the Government with its response, Doc. No. 13. Page references, except to those in the Presentence Investigation Report ("PSI"), are to those assigned by CM/ECF.

collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's

3

performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one

4

has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Failure to Adequately Challenge Attributed Loss*

Fergerson contends that her trial counsel rendered ineffective assistance by failing to adequately challenge the loss attributed to her for sentencing purposes. Doc. No. 1 at 5-7, 13-15; Doc. No. 4 at 4-6, 9-12.

Under § 2B1.1(b)(1) of the Sentencing Guidelines, the offense level for a defendant convicted of certain economic offenses is subject to a specific-offense-characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss. U.S.S.G. § 2B1.1(b)(1). Application notes clarify that the "loss is the greater of actual loss or intended loss."[3] U.S.S.G. § 2B1.1, cmt. n.3(A). In the context of fraud offenses, sentencing based on intended loss is appropriate even where no actual loss occurred. *United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993); *see, e.g., United States v. Willis*, 560 F.3d 1246, 1250-51 (11th Cir. 2011) (finding that intended loss included defendant's fraudulent claims to FEMA that were not paid).

Here, the district court found that the loss (whether actual loss or intended loss) attributable to Fergerson for her criminal conduct was approximately $4,364,000, based

---

[3] "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. n.3(A)(i). "Intended loss," on the other hand, means "the pecuniary harm that was intended to result from the offense," including pecuniary harm "that would have been impossible or unlikely to occur." *Id*., cmt. n.3(A)(ii).

5

on Fergerson's participation with her sister and coconspirator in a fraudulent tax refund scheme. Ex. 8 at 78, 91. Based on this finding, and applying § 2B1.1(b)(1), the court imposed an 18-level enhancement to Fergerson's offense level. *See* U.S.S.G. § 2B1.1(b)(1)(J), (K) (providing for 18-level specific-offense-characteristic enhancement where the loss was more than $2,500,000 but less than $7,000,000).

The factual basis for Fergerson's guilty plea indicated that she worked in concert with her sister Loretta by stealing the personal information of individuals (including their names and Social Security numbers) and giving that information to her sister, who then used the stolen information to prepare and file false tax returns. Ex. 2 at 10-11. Fergerson assisted her sister in operating a fraudulent tax-refund scheme through Fast Tax Cash, a tax-preparation business run by Fergerson's sister. *Id*. Fergerson would help her sister and her employees file fraudulent tax Returns for Fast Tax Cash clients. *Id*. She admitted to recruiting clients for Fast Tax Cash and coaching them to give false information on tax returns. *Id*.

Notwithstanding Fergerson's claim that her counsel lacked diligence on this issue, the record reflects that over 70 pages of the 100-page sentencing hearing transcript concern the question of attributed loss, which was put into issue when Fergerson's counsel objected to the finding in the Presentence Investigation Report ("PSI") that Fergerson was accountable for a loss of "at least $3,000,000," warranting an 18-level enhancement under § 2B1.1(b)(1). *See* Ex. 8 at 7-78; PSI (Doc. No. 13-5) at 10, ¶ 34.

6

At the sentencing hearing, IRS Special Agent Chris Forte testified that over 90% of the tax returns he audited that were filed through Fast Tax Cash, the tax preparation business run by Fergerson's sister, were fraudulent.[4]  Ex. 8 at 56-57.  For the period reviewed by Agent Forte, Fast Tax Cash filed returns containing approximately $5.8 million in refund claims.  *Id*. at 14.  Defense counsel thoroughly cross-examined Agent Forte, argued that most of the loss amount through Fast Tax Cash should be attributed to Fergerson's sister, and challenged the methodology used by the Government to estimate the percentage of fraudulent returns filed by Fast Tax Cash.  *Id*. at 7-15, 29-43, 48-59, 62-66, 69-76.  It is difficult to see how defense counsel could have more diligently challenged the loss calculation in Fergerson's case, and Fergerson does not identify what other actions counsel could have taken.

The district court rejected defense counsel's arguments and found that the loss amounts through Fast Tax Cash were attributable both to Fergerson and her sister because Fergerson, as part of the conspiracy, helped her sister and her employees file fraudulent tax returns for Fast Tax Cash clients and admitted to recruiting clients and coaching them to give false information on tax returns.[5]  Then, crediting Agent Forte's testimony that over

---

[4] Agent Forte testified that he audited a sample of 40 to 50, out of 1,566, tax returns filed by Fast Tax Cash for the 2004 through 2008 tax years.  Ex. 8 at 33, 36, 56-57.

[5] The Sentencing Guidelines direct the court to consider a defendant's relevant conduct. *See* U.S.S.G. § 1B1.3(a)(1)(A) & (B) (relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the
(continued...)

7

90% of the Fast Tax Cash tax returns he audited were fraudulent and applying a modified "ultra conservative approach" to calculating tax loss, *see United States v. Jordan*, 374 Fed. App'x 3 (11th Cir. 2010),[6] by estimating (conservatively) that 75% of the tax returns in Fergerson's case were fraudulent, the court found by a preponderance of the evidence that the loss attributable to Fergerson for her criminal conduct was approximately $4,364,000 (i.e., approximately 75% of the approximately $5.8 million in refund claims filed by Fast Tax Cash during the period reviewed). Fergerson neither demonstrates that this finding was erroneous nor identifies a plausible argument or evidence that her trial counsel could have presented that was reasonably likely to change the district court's loss determination. Failing to show either deficient performance by counsel or resulting prejudice, Fergerson is not entitled to relief based on this claim of ineffective assistance of counsel.

Use of Modified "Ultra Conservative" Methodology to Calculate Loss

Fergerson also presents a freestanding claim that the district court abused its discretion by using a modified "ultra conservative" methodology to calculate loss in her

---

[5](...continued)
defendant" and "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

[6] In *Jordan*, an IRS special agent testified that most of the tax returns filed by the defendant's tax preparation business were suspected of containing fraudulent refund claims. *See* 374 Fed. App'x at 6. The agent stated that he then took an "ultra conservative" approach and counted only half of those tax returns in estimating the intended loss of the fraudulent tax refund scheme. *Id*. The Eleventh Circuit held that the district court properly credited the agent's testimony in determining the loss. *Id*. at 7.

case. Doc. No. 1 at 13-15; Doc. 4 at 9-12. However, this claim is barred by the waiver provision in the plea agreement, under which Fergerson waived her right to appeal or collaterally attack her conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. Ex. 2 at 11-12. In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). The written plea agreement contains Fergerson's signature under language acknowledging that she had read and understood the plea agreement and that the matters and facts in the written agreement accurately reflected all representations made to her and all the terms reached. Ex. 2 at 17. Fergerson does not demonstrate – or even allege – that she did not understand the consequences of the waiver provision. Consequently, her present claim is barred from review.

This claim is also barred because it was not pursued on direct appeal. Ordinarily, if an available claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994). "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural

9

default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Lynn*, 365 F.3d at 1234-35 (quoting *Mills*, 36 F.3d at 1055). Fergerson does not demonstrate cause for her failure to present this claim on appeal. Nor does she make the showing of actual innocence required to overcome her procedural default. Consequently, this claim is foreclosed from review.

Even if Fergerson asserted ineffective assistance of counsel as cause for her procedural default, she would not prevail. As noted above, at sentencing, defense counsel challenged the methodology used to calculate loss in Fergerson's case. And the waiver provision in the plea agreement precluded counsel from pursuing this substantive claim on appeal. Finally, as also noted above, Fergerson demonstrates no error in the district court's determination of attributable loss in her case. As the Eleventh Circuit has recognized, the Sentencing Guidelines do not require the United States to establish the amount of loss with precision. *Jordan*, 374 Fed. App'x at 7 ("'[T]he guidelines contemplate that the court will simply make a reasonable estimate based on the available facts.'" (quoting U.S.S.G. § 2T1.1 cmt. n.1.)). Fergerson is not entitled to relief based on this claim.

### 2. *Failure to Investigate Mental Health Issues*

Fergerson claims that her trial counsel rendered ineffective assistance by failing to investigate her "mental health issues" even though counsel knew that she suffered from mental illness and received Social Security benefits based on her mental illness. Doc. No. 1 at 8-9; Doc. No. 4 at 6-8. She maintains that had counsel investigated these issues, he

would have discovered she was not mentally competent to appreciate the nature and consequences of the proceedings against her and would also have uncovered evidence that could have been used to obtain a downward departure at sentencing. *Id*.

Fergerson's PSI details her mental health issues, noting among other things that she has been diagnosed as suffering from "schizoaffective disorder depressive type and major depression" and that she receives SSA disability benefits. PSI at 16-17, ¶¶ 65-68.

Addressing this issue in an affidavit filed with the court, Fergerson's trial counsel, Russell T. Duraski, avers:

> The Defendant asserts that counsel failed to investigate her "mental health issues." The undesigned must simply respond that the Defendant had no apparent mental health issues. In fact, the Defendant was questioned at an Ex Parte hearing by the Court wherein she was seeking to have new counsel appointed. After talking directly to the Court, the Judge made no findings that she did not seem to understand what was happening in her case. When she subsequently pleaded guilty in the case, the Magistrate had the usual thorough discussion with her and found that he was satisfied that she was competent to enter the plea. Then counsel was with her at the probation officer's interview and she was able to successfully recall events, answer questions, offer explanations and carry on a meaningful conversation with the officer. There was no reason to believe that she suffered under any mental disease or defect. Counsel denies the allegation.

Doc. No. 12 at 2.

At the change of plea hearing, Fergerson testified under oath that she had not recently been treated for any mental illness or addiction to narcotics of any kind. Ex. 3 at 3. Fergerson also informed the probation officer who prepared her PSI that she was not currently participating in treatment or counseling; that she was taking prescription

11

medication, including Prozac and Seroquel, only when needed, for hallucinations, depression, and insomnia; and that "her mental and emotional health has been stable and healthy for the past three years." PSI at 17, ¶ 69.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106). In order to actually prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298-99; *Medina*, 59 F.3d at 1106.

Notwithstanding Fergerson's mental health history, the record does not positively, unequivocally, and clearly generate a legitimate doubt about her competency. *See Battle*, 419 F.3d at 1299. Her mental and emotional health had stabilized by the time criminal proceedings were initiated against her. She appeared to fully understand the proceedings

against her. And she participated meaningfully in those proceedings. Therefore, she is not entitled to relief based on her claim that her trial counsel was ineffective for failing to investigate her mental issues and discover her alleged incompetency.

To be eligible for consideration for a downward departure based on diminished mental capacity, a defendant must demonstrate, *inter alia*, "that . . . [her] reduced mental capacity 'contributed' to the commission of the crime." *See United States v. Ruff*, 998 F.Supp. 1351, 1361 (M.D. Ala. 1998); U.S.S.G. § 5K2.13. A departure based on diminished mental capacity "'requires a showing that the defendant's reduced mental capacity contributed to the commission of the offense; such a link cannot be assumed.'" *Ruff*, 998 F.Supp at 1361 (quoting *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir. 1992)). A "departure is warranted if the defendant's reduced mental capacity prevents the defendant from appreciating the wrongfulness of the offense, or if the defendant understands the wrongfulness of the act, but the reduced mental capacity renders the defendant unable to control the offensive conduct." *Ruff*, 998 F.Supp. at 1361.

Fergerson does not demonstrate that she suffered from a mental impairment that prevented her from appreciating the wrongfulness of her conduct or that rendered her unable to control her behavior at the time she committed the offense. The record reflects that she willfully and knowingly participated in an immense and protracted fraudulent tax refund scheme designed to net her and her conspirators substantial amounts of money. Consequently, she fails to show a reasonable likelihood that the outcome of her sentencing

would have been different had her counsel pursued a downward departure based on reduced mental capacity. She is not entitled to relief based on this claim of ineffective assistance of counsel.

### 3. *Stipulation to Number of Victims and Failure to Raise ex Post Facto Argument Regarding Version of Sentencing Guidelines*

Fergerson claims that her trial counsel rendered ineffective assistance by having her stipulate, as part of the plea agreement, that her offense involved 10 or more victims and therefore warranted a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A).[7] Doc. No. 1 at 10; Doc. No. 4 at 8. In a related claim, she argues that her counsel was ineffective for failing to argue that use of the 2011 Guidelines in her case caused the PSI and the district court to overstate the number of her victims for purposes of § 2B1.1(b)(2), yielding a higher sentencing range, in violation of the Ex Post Facto Clause. Doc. No. 1 at 11; Doc. No. 4 at 9.

In its response to these claims, the Government observes that its sentencing exhibits, the testimony of Agent Forte, and Fergerson's own admissions in the plea agreement established that the number of Fergerson's victims easily exceeded the 10 individuals required for the two-level enhancement in § 2B1.1(b)(2)(A). During a search of Fast Tax

---

[7] Section 2B1.1(b)(2)(A) of the Sentencing Guidelines calls for a two-level specific-offense-characteristic enhancement for certain economic offenses involving 10 or more, but fewer than 50, victims. *See* U.S.S.G. § 2B1.1(b)(2)(A) & (B).

Cash, federal agents seized 135 client folders containing stolen identities. Further investigation revealed that Fergerson and/or her conspirators used 118 of these stolen identities to file false tax returns, for which 118 tax refunds were fraudulently obtained. *See* Ex. 7 at 46-48; Ex. 8 at 31.

Fergerson's challenge to the number of her victims for purposes of § 2B1.1(b)(2) runs counter to her stipulations in her plea agreement and her conduct admissions when pleading guilty. There can be but little doubt that the favorable terms of her plea agreement – and perhaps the fact that a plea offer was even made in her case – depended to some degree on her willingness to concede that her offense involved 10 or more victims and therefore warranted a two-level enhancement under § 2B1.1(b)(2)(A). Trial counsel may well have recognized that the plea agreement and the Government's willingness to recommend a sentence reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility depended on Fergerson's full acceptance of responsibility for her actions and her expressions of contrition. A challenge to the victim total – putting the Government to the task of presenting additional evidence regarding the number of Fergerson's victims – would have conflicted with the notion that Fergerson had owned up to the conduct for which she was responsible. Strategy choices by counsel are entitled to considerable deference. *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000). Fergerson does not demonstrate that her counsel was ineffective for having her stipulate that her offense involved 10 or more victims.

Fergerson asserts that use of the 2011 Guidelines (which were in effect when she was sentenced) instead of the 2008 Guidelines (which were in effect when her criminal conduct concluded) to determine the number of her victims violated the Ex Post Facto Clause[8] and that her counsel was ineffective for failing to make this argument at sentencing. Doc. No. 1 at 11; Doc. No. 4 at 9. As a general rule, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). However, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). *See Peugh v. United States*, ___ U.S. ___, 133 S.Ct. 2072, 2084 (2013) (holding that the Ex Post Facto Clause is violated when a defendant is sentenced under a version of the guidelines promulgated after she committed her crime if the newer version of the guidelines yields a higher sentencing range).

In making this argument, Fergerson notes that the PSI referenced an application note, specifically Application Note 4(E) to § 2B1.1(b)(2), contained in the 2011 Guidelines but not in the 2008 Guidelines, when finding the number of her victims for purposes of § 2B1.1(b)(2). *See* PSI at 10, ¶ 35. Application Note 4(E), which became effective in

---

[8] The Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 10, protects people from, among other things, being subjected to a punishment more severe than that prescribed when the crime was committed. *See United States v. De La Mata*, 266 F.3d 1275, 1286 (11th Cir. 2001).

November 2009, broadens the definition of "victim" for economic crimes involving identify theft to provide that, in such cases, "'victim' means (i) ['any person who sustained any part of the actual loss,' U.S.S.G. § 2B1.1 cmt. n.1]; or (ii) *any individual whose means of identification was used unlawfully or without authority*." U.S.S.G. § 2B 1.1 cmt. n.4(E) (emphasis added). Prior to implementation of Application Note 4(E), a victim for purposes of § 2B1.1(b)(2) must have sustained an economic loss or bodily injury. *See* U.S.S.G. § 2B1.1 cmt. n.1(A) & (B) (2008).

The gist of Fergerson's argument is that the taxpayers whose identities and tax refunds were stolen through her scheme were not victims under the narrower definition of "victim" contained in the 2008 Guidelines because they sustained no economic loss, presumably because the IRS ultimately reimbursed them. However, the Eleventh Circuit has interpreted the term "victim" in § 2B1.1(b)(2), even under the narrower definition applicable before Application Note 4(E) became effective, to include a reimbursed party who suffered loss. *United States v. Lee*, 427 F.3d 881, 895 (11th Cir 1995); *United States v. Nikoghosyan*, 408 Fed. App'x 272, 274 (11th Cir. 2011); *United States v. Smiley*, 210 Fed. App'x 972, 975 (11th Cir. 2006) ("The fact that the [victims] elect not to seek restitution does not mean that they did not sustain an actual loss."); *United States v. Cornelius*, 202 Fed. App'x 437, 439 (11th Cir. 2006). Therefore, although Fergerson's victims may later have been reimbursed by the IRS, they are properly considered as victims for purposes of § 2B1.1(b)(2), whether under the 2011 Guidelines or the (pre-Application

17

Note 4(E)) 2008 Guidelines.  Consequently, no *ex post facto* violation resulted from use of the 2011 Guidelines at her sentencing.

For the reasons indicated above, Fergerson does not demonstrate that, had she not stipulated that her offense involved 10 or more victims but instead had insisted that the Government be put to the task of presenting further evidence and argument concerning the stolen identities and stolen tax refunds of the individuals victimized by her scheme, the outcome of the proceedings would have been different, i.e., that the district court would have found that the two-level enhancement under § 2B1.1(b)(2)(A) did not apply to her offense conduct.  Therefore, she is not entitled to any relief based on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Fergerson be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before August 25, 2015**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

     Done this 11th day of August, 2015.


                                              /s/Charles S. Coody
                                       CHARLES S. COODY
                                       UNITED STATES MAGISTRATE JUDGE